Next case, Clarkson College v. Workers' Compensation Comm'n Number 411-0216 Counsel please Good morning. I'm here to please the court. Counselor, my name is Attorney Eric Shavanick. I represent Parkland College, the employer in this case. We are here asking you to reverse the decision of the trial court and find that the employee's injury did not arise out of and in the course of his employment with Parkland College. Before you get going on that, could you give me the name of a single case that you cite in support of any of the arguments in your brief other than decisions of the Workers' Compensation Commission? No, Your Honor. I was never able to find a case in regards to an instance like this. Well, you can't cite cases of the Commissioned Office. That's not allowed. And if you don't cite authority in support of your position, the positions are forfeited. So now the question becomes, why shouldn't we hold all the issues you raise to have been forfeited for failure to cite authority? Well, if there have been no previous cases regarding this specific instance, then what are we supposed to cite outside of generalized appellate court decisions such as the ones we cited, Brady v. Lewis, Wright? The only reason you cited those opinions was for standard of review. Not a single case. From page 8 to page 13, not a single case other than the Commission. I guess there's one case that's in the conclusion that Heston v. Industrial Commission states have the burden of establishing elements of a disability claim. Well, it doesn't have anything to do with the question of whether it was incurred out in the course of employment. Well, I think it does in the fact that our argument is focused upon the idea that the employee has not been able to prove that anything happened actually at work. Why? That the burden is on them. Because he never saw anything by it. All he did was feel a sting. And his testimony says that when asked, did you know what kind of bug bit you, he responded, no. And then when asked, did you ever see a bug, he responded, no. When you get bitten by bugs, do you know what kind they are? Excuse me, Your Honor? When you're bitten by bugs, do you know what kind they are? No. No, Your Honor. I don't either. The second question was, did you ever see a bug? And the answer was no. Do you always see the bugs that bite you? No. And the third question, Your Honor, was, did you see any bugs in the area as you were walking out? And his response, that was never anything entered into evidence about whether he saw any bugs in the area. Wasn't there testimony that there was always insects flying all around the garbage dump? The actual testimony, Your Honor, was that... The testimony was that there's always bugs, that he sees bugs in the area. But there's garbage there. Well, there's garbage there, but that doesn't mean there's always bugs in the area. We could drive around Springfield right now, and I'm sure we could find dumpsters with bugs, dumpsters without bugs. And if we came back in two hours, I'm sure the conditions would have changed. Do you think we could find a dumpster without any bugs? No, Your Honor. I doubt we could find a dumpster without any bugs anywhere. A bug-free dumpster? But I would say we could probably find a dumpster without bugs flying around that typically bite individuals. How would we know that they can't bite individuals? We could find a dumpster with mild-tempered bugs. What's that term, etymology, without getting deep into the etymological? I don't know. I'm not... Of insects. I want to clarify your position. It's a little confusing. As I understand it, you are not contesting the claimant's injuries were occurred in the course of the employment, correct? Correct, Your Honor. It was obviously working when this happened. Correct, Your Honor. You're contesting the arising out of part of whether or not he was exposed to a greater risk than the general public. Am I correct on that? Yes, sir. Does the general public go through the dumpster on their way in and out of the college? No, but neither did the employee, Your Honor. He walked through the dumpster... What if he had a dumpster garbage? But there's no testimony that this is a dumpster that's limited to just employees. It's a dumpster... Wait a minute. Hold on. Well, I don't... What, do the students live in there? No, but there are numerous instances where dumpsters are... there's cars parked next to dumpsters, that individuals walk past them. There's no evidence in the record of where this dumpster actually is and how it's separated from everyone else. There's just testimony that's behind the theater. Again, I'm trying to bring the law back into the issue. Isn't the frequency with which he does this, can that be a legal basis to find that he's exposed to a risk greater than the general public? We all know that dumpsters, I think we've conceded, probably have insects that can bite people. You're saying, well, what's the big deal? This is a dumpster. Everybody's around dumpsters. But isn't he required as part of his job to dump the garbage in the dumpster? Part of that, Your Honor, is that he does not know if anything bit him. Are you conceding that he made this thing up, he stabbed himself? Isn't there an obvious physical impairment or injury, as we know it, as a result of this thing? The reality, Your Honor, is that we have no idea. In every single medical report, he changes his story about what happened. Nobody diagnosed this as a bug bite? I don't believe it was diagnosed as a bug bite. It was diagnosed as him having an infection and eventually it was infected. It was diagnosed with MRSA. He was diagnosed with MRSA. There was an abscess on his leg, right? Yes. So he gives, again, came to the event, he gives a history of a bug bite. He says he was bitten by a bug, albeit didn't see the bug, didn't know what kind of bug it was. He says that, correct? He's then treated for some type of an infection at the site of this alleged bug bite, correct? Correct, Your Honor. So why can't the Commission believe him that he had a bug bite? Because he doesn't even know if he had a bug bite. On October 14th, he tells his doctor that on October 4th he had a bug bite and he scratched it at work. And after that it became infected. The patient states that he was at work, this is October 16th. The patient states that he was at work on October 4th, 2008. He scratched his leg in a dirty area. The leg became progressively worse. He says he had a bug bite as of October 14th. But on October 16th, as you just said, he didn't mention a bug bite and said that he scratched it on a dirty area. And on October 9th, 2008, just five days after the accident, when he goes and sees Dr. Jones, he states that Dr. Jones, who examined his leg and performed a minor surgery on him, he says that there was no mention of a bug bite in this record. The fact is, we agree that this was in the course of, but the positional risk doctrine is not part of Illinois law. And just because he was at work. You're disputing the fact that he got bitten by a bug on October 4th. Or that there's enough evidence in the record to support that conclusion. Neither he nor we know what happened to him on October 4th. He has no idea what happened. He says he was bitten by a bug. But he changes his story throughout. He doesn't change his story. He never changes his story. He never says that he received this injury by any means other than a bug bite. Never. Now, he left bug bite out on several occasions. He left it out on October 9th, or at least it doesn't appear in Jones' records. But it does appear in Jones' records on October 14th. In order of October 16th, where he says that he scratched it on a dirty area. And that's how he says that's what caused the injury. So it was an infection. Excuse me? He scratched what? No, he said he scratched the area. He scratched the area of his leg on a dirty area. And he believes that's what caused him to have the infection on that day. So even he has no idea what actually caused. The note says he felt the sharp pain in his leg almost like a bug bite. He remembers scratching the area throughout the day and had some pain. And he said he scratched it even by the end of the evening and put pressure on it. And which note was that, Your Honor? October 16th. Our understanding is that there is no evidence of what actually took place. That he was never able to testify that he actually even saw any bugs on that day. I feel that if you were walking in that area about to open a dumpster and put trash in, if there were bugs in the area, you would have seen bugs. You walked in that. Mr. Bromham, you're blending your argument. Your briefs say the claimant must prove that an accident occurred which arose out of the enhanced risk, I'm quoting, associated with his or her employment. Claimant is possibly bitten by a bug and you're saying this is a risk the general public is exposed to constantly. Now you're vacillating between this thing never happened and he was not exposed to a greater risk. What exactly is your position? Nothing ever happened to him or that even if it did, it was not a greater risk to the public. I think we have two positions, Your Honor. That if you find that something actually happened to him on that day, that he was bit by a bug. There's a good chance we might find something happened to him. So if you find that something actually happened to him on that day, that he was bit by a bug, that he was not put at a risk greater than that. And why is that? Even though he's got to go to the garbage dumpster as part of his duties, correct? Correct, Your Honor. There is no evidence that this garbage dump is separated from anything else. His testimony is that the garbage dump is in a special area, that every garbage dump is behind a certain area of Parkland College. He doesn't say that there's any cement bricks separating it from the general public. What does the physical location of it have to do with it? If he's engaged in an activity that exposes him to a greater risk than the public, albeit on a more regular basis, your position would be if somebody has to dump off garbage and go into a dumpster three or four times a day, it doesn't matter because other people occasionally go into a dumpster. The individuals at Parkland College, he testified that there are dumpsters all over the place. Individuals at Parkland College have to walk past those areas. He's not put at a greater risk than the general public. The dumpster services the Parkland College Theater, is that correct? That specific dumpster does, Your Honor. Is it inside the theater? It is not, Your Honor. I wouldn't think so. And so they put the dumpster behind the theater for what reason? I don't know, Your Honor. So the people don't have to be with the dumpster while they're in the theater? You think that's a good reason why? Could be because the dumpster's not very attractive and they... Smells? And sometimes contain insects. And bugs? Sometimes they do contain insects, Your Honor. Well, how about your third alternative, if you could try? And that is, yes, he's exposed to a greater risk than it arose out of, but his scratching of this was an intervening that broke the chain. Independent intervening act? Yes. Yes, he did something that increased his injury by scratching it? That is an argument, Your Honor, but we didn't review any of the... And you're not adopting it, so... No. All right, we're past that. Yes. I guess in summation, it is our belief that the employee has not proven that his employment is subjected to a greater risk than that to which the general public is. His testimony and medical records show that he has no knowledge of what, if anything, actually caused him to experience a stinging sensation. There is no testimony that he saw any bugs or insects or anything that could have caused this on the date of the accident. There is no testimony that this was an area that the general public was restricted from in any way, shape, or form. There is no testimony or evidence that this was an area that no one else could have walked into. The burden is on the petitioner or the employee to prove that the injury arose out of and in the course of his employment with the employer. Mr. Light, the employee, was not put at a risk greater than which the general public is put, and we would ask that you reverse the decision of the circuit court and find that this injury did not arise out of and in the course of his employment with Parkland College. Thank you, Your Honor. Counsel, please. Good morning, Your Honors. May it please the Court, my name is Ryan Meikamp and I represent Mr. Light in this matter. As the respondent has indicated, this case has been approved or has been found compensable on all levels of review, from the arbitrator through the commission up to the circuit court, and I would ask today that you affirm their decisions going forth based upon the following. First of all, I believe Mr. Light has provided a consistent history of his injuries while working for Parkland College. His original ER visit at Proveno Covenant Medical Center on October 6, 2008, the first page of their notes indicates bite or possible abscess to the left leg. Obviously, the petitioner is not a doctor, he's a layperson. He's relying upon his medical professionals to diagnose him with the medical conditions he presents with. Is this his first presentment following the Proveno? I believe it is, Your Honor, yes. And what date was the alleged stinging that was laid? The date of the accident was October 4. So two days later, they have an etiology report that says it could be a bite or an abscess. I don't know if it's an etiology report, Your Honor, but it does mention on the cover sheet of the ER records of Proveno Covenant Medical Center on October 6, 2008, bite or possible abscess. Well, there was some record of an injury. Yes, there was. And I believe that Mr. Leik is even the arbitrator and the commission, as well as everyone else, has found Mr. Leik credible throughout this entire process. The respondent has not presented any, they did not call any witnesses, they did not take any depositions, they did not present any evidence to refute or argue against the petitioner's credibility in this matter, nor to refute how the accident took place. Well, in the course of the etymological debate, I think counsel tacitly acknowledged that there could have been a bug bite. His main argument seems to be, even assuming that to be true, as I understand it, he's not exposed to any greater risk than anybody walking around near a dumpster. So what's your response to that? Obviously, I would disagree with that. I think Mr. Leik was placed at a greater risk, Your Honor, basically for the following facts. The dumpsters were in a special area. Mr. Leik testified to that effect. Basically, his testimony was not refuted by the respondent in any way. Additionally, as numerous of Your Honors have pointed out, the public isn't in the area where this dumpster is. Mr. Leik, as part of his employment, was required to go out to this area. He had to take the trash to that area. The evidence was he had to take the trash out as part of his regular job responsibilities? I believe that it was partly that he had to take it out as part of his job occupations and additionally that the dumpsters were in a specific area. There was an assigned area where he had to take this trash. Obviously, this would be a dirty area. It would be filled with bugs. The trash he would be hauling out, in my opinion, would be theater trash. This would be sugary stuff. This would be stuff that even more would attract bugs. Did the public use that dumpster or have access to it? There was no testimony either towards that or not towards that, Your Honor. I would assume that Mr. Leik would not be depositing trash in a dumpster behind a theater that was owned by Parkland College. I would assume that would be some kind of theft of services. But in that same light, Mr. Leik did also report that he was bit to his supervisor on the day after his accident. Mr. Leik's supervisor even came to his house to review his bite that he reported to him. Mr. Leik chose to go to the ER a couple of days later. I think there's testimony to the effect that his wife was concerned about paying for the medical bill, and that was why they didn't report to the ER immediately. So I think with regard to the greater risk argument, I think it's clear that Mr. Leik's job occupation is putting him at a greater risk than the general public. Greater risk for what? Bug bites? A greater risk for bug bites in this case, but I think in general, by placing him in the area around the dumpster, you would put him in a greater risk for a variety of different injuries. But with regard to the bug bites specifically, I think the dumpsters would place him in the unsanitary conditions there and it would place him at a greater risk for bug bites, which is his injury in this case. And what evidence do we have that we all think that? What evidence do we have? That there are more bugs there. That he observed a lot of bugs there. Mr. Leik testified that he had seen bugs in that area before. His testimony was not refuted by the respondent in any way. I don't think there's any evidence to refute there wasn't bugs there. So that's not his job is to refute that. It's your job to establish that. I believe that his testimony establishes that, Your Honor, based upon the fact that the arbitrator found him credible and his testimony wasn't refuted. Well, the arbitrator can find him credible. He got a bug bite. Where is his exposure to greater risk? It's pretty close to positional risk. More bugs. More bugs by the dumpster. More bugs. He said more bugs. He said more bugs. He said more bugs. Can I ask you a question? What was his injury? His injury, Your Honor, was he ended up with a MRSA infection. So was his injury actually the bite or was his injury the infection that he received after he scratched the bite? I believe that that's left. I mean, it's in the medical records. The respondent in this case presented no Section 12 examination. He wasn't bitten by a pterodactyl, was he? He was not, Your Honor. Okay. So he didn't have a golf ball-sized thing from his leg. He was bitten by a rat. My understanding is that he had to undergo an incision and drainage procedure on two separate occasions. It got infected. It got infected and he had MRSA in it. He also underwent a course of antibiotics. Luckily for Mr. Leick, it did heal. He does have a pretty good scar on his leg, if I recall correctly, and that's why I believe he was awarded like 7.5% disability. So my question is in line with Justice Polich's question, why wouldn't we find that the scratching of the bug bite was not a superseding intervening cause that broke the causal connection between the bite by the bug and the infection that he received for which he received compensation? Well, first of all, I don't believe respondents ever made that argument. I don't believe that they can add an argument on at the appellate court level. They never made that argument at all. Well, they still haven't made the argument. And that further justifies my claim that I don't believe that they can add in an argument at this point. I think they would be barred from making that argument at this point, Your Honor. Well, they've forfeited all their argument. So we've got to do something else. We've got to figure out what we're going to do with this. Sometimes we have to make the argument. I understand that. And I believe, and that kind of walks me right into my next situation, Your Honor. I believe that the arguments were made to the arbitrator, they were made to the commission, they were made to the circuit court in this matter. All of those finders of fact found Mr. Light credible, found that he had an accident, found that this was related to his employment. I don't believe the respondent has presented any evidence in this matter to overturn all of those finders of fact. I would therefore ask that this court uphold the circuit court in this matter, the arbitrator, and the commission in this matter, find this case compensable. Thank you for your time. Thank you. Mr. Carver, please. And nothing further, Your Honor. Thank you, counsel. The court will take the matter under its right for disposition.